## Pendleton v. Commonwealth.

(Decided May 26, 1936.)

O. B. BERTRAM for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Affirming.

Henry Pendleton appeals from a two-year sentence for grand larceny.

The principal ground urged for reversal is that the evidence was not sufficient either to take the case to the jury or to sustain the verdict.

For the commonwealth Bud Hash, on his direct examination, testified as follows: He lived on Sam Speer's place. He was working and Henry Pendleton asked him if he wanted to sell his corn. He said, "No." Henry asked him if he was going to sell it, how much he would take for it. He replied he wanted $39 cash money before it went away, and Henry said he would like to buy it. He then told Henry that he had to have cash money before the corn left. That was Wednesday, and on Thursday Henry came and got the corn. Henry got all the corn he had except three or four bushels. He never authorized Henry to get the

corn, and never consented to his taking it. Henry got $36.70 for the corn, and never came back to pay him. On cross-examination he testified that he told Henry that if he was going to sell the corn he would have to have $39 cash. Henry never proposed to pay him for what he had gotten. After so long a time, he saw Henry and Henry said, "Buddy, I will pay you for it." He never accepted, because there was nothing to accept. Henry never offered to pay him any money on that occasion. Mrs. Hash, wife of Bud Hash, was at home the day Henry Pendleton took the corn. She was quilting at the time, and saw him and a truck through the window. She went to the door and said, "Don't take Bud's corn off." It was Mr. Pendleton who got the corn. She never authorized him to take the corn, and did not know he was going to get it. Pendleton said he would see Bud that night, but did not see him. Pendleton left with the truck, and the corn was on the truck. Edgar Monroe lived at Greensburg, and was in the milling business. Pendleton came to his mill and sold him some corn. He paid $36.70 for the corn, paid a hauling bill of $4, and gave Pendleton a check for $32.70. Pendleton told him that he had bought a small crop, and had some more he was figuring on and wanted to sell it. Pendleton stated it was his corn. There were fifty-six or fifty-seven bushels. He was not acquainted with Hash, but saw him the next day after the transaction. Hash wanted to know if Henry Pendleton sold him any corn.

On the other hand, appellant testified as follows: He knew Bud Hash and bought from him the corn, three sacks of hay, and some fodder. Hash said he would not be at home, but his wife would. He went to the house and told Hash's wife that he had come after the corn. She asked if that would interfere with the $39 trade, and inquired when he would be back. He told her that evening if nothing happened. He saw Bud in town and Bud demanded the $39. He told Bud that the hay was still down there, and he still demanded the $39. When he met Bud, he offered to pay Bud for the stuff he had, but he refused to pay until he got it all out. By the next morning he would have been financially able to pay for the corn he carried away. He did not have as much as was coming to Bud. Thir-

ty-nine dollars was the price agreed on. He never had any intention of stealing the corn, but made a fair trade and told Bud where he was going with the corn. He did not think Bud told him not to take the corn until he paid for it. Bud's wife did not come out and tell him not to take the corn. He took the corn and did tell her he would see Bud that night. He was to see Bud the next day and fix things up. He offered to pay Bud. He had money with him. He never got the money out of his pocket as Bud demanded the $39.

Bud Hash denied stating to Mr. and Mrs. Pendleton that he had sold Henry his corn. He did tell them that Henry took the corn, and he did not know what to think of it. Mrs. Pendleton testified that Hash told her that Henry sold the corn.

The argument is that the facts do not show a felonious intent, but merely show a sale and a failure to pay. While the argument is ably pressed, there are certain pertinent circumstances that cannot be overlooked. Though appellant claims that he did not intend to steal the corn, but did intend to pay for the corn when he took away the remainder of the corn and the other articles purchased, yet, on the other hand, Hash testified that he told appellant he would have to have $39 cash before the corn was taken away, that appellant never paid that amount, and that he never authorized appellant to get the corn or consented that he should take it away, and further that, though appellant, after a long time, said, "Buddy, I will pay you for it," appellant never offered him any money. In short, the case is one where, according to the evidence for the commonwealth, no trade was made between the prosecuting witness and appellant, but appellant carried the corn away, sold it, and kept the proceeds. In the circumstances, it was for the jury to say whether appellant purchased the corn and carried it away with the intention to pay for it, or willfully and feloniously took and carried away the corn against the will and without the consent of the owner, with the intent to convert the same to his own use and permanently deprive the owner thereof, and it cannot be said that the verdict is flagrantly against the evidence. Roberson's Criminal Law and Procedure (2d Ed.) p. 1083, sec. 856.

The only other error relied on is the admission of

Edgar Monroe's statement that he saw Hash the next day after the purchase of the corn, and Hash wanted to know if Henry Pendleton sold him any corn. Witness did not state what he said in reply, and, inasmuch as appellant admitted selling the corn to the mill, it is not perceived how the reference of witness to Hash's inquiry could have been prejudicial.

Judgment affirmed.